UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SARAH H.,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | CASE NO. 3:21-cv-05149-JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Magistrate Judge Rule MJR 13.  *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 3.  This matter has been fully briefed.  *See* Dkts. 15, 19, 20.

Plaintiff applied for disability benefits and presented evidence that she suffered from fibromyalgia and mental health disorders.  An Administrative Law Judge ("ALJ") found that plaintiff was not disabled.  Although plaintiff argues that the ALJ erred in rejecting a treating nurse's opinion, plaintiff fails to show that the ALJ's citations to evidence of record lack substantial evidentiary support.  And although the ALJ did not provide reasons specific to lay witnesses before rejecting their statements, the ALJ gave detailed reasons for rejecting plaintiff's

ORDER ON PLAINTIFF'S COMPLAINT - 1

own testimony that applied with equal force to the lay witness statements. Finally, the Court disagrees that the separation of powers issue that plaintiff has identified merits reversal and remand. For these reasons, the Court affirms this matter.

## BACKGROUND

On September 17, 2018, plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. AR 15. Plaintiff alleged disability beginning February 28, 2014, when she was 46 years old, on the basis of fibromyalgia. AR 80–81. She alleged that she stopped working on that date due to her conditions and that she had been employed as a human resources manager. *See* AR 243–44. Her highest level of education was completion of the twelfth grade. AR 244.

The Administration denied plaintiff's claim initially and upon reconsideration. AR 15. She then appeared for a hearing before ALJ Allen Erickson in June 2020. AR 15, 27. In August 2020, the ALJ concluded that plaintiff had at least the severe impairments of fibromyalgia, generalized anxiety disorder, depressive disorder, and obsessive-compulsive disorder. AR 17. However, the ALJ found that plaintiff was not disabled. AR 26. The Appeals Council denied plaintiff's request for review, and plaintiff brought suit in this Court. AR 1.

## DISCUSSION

Plaintiff takes issue with the ALJ's treatment of two lay witness statements and plaintiff's treating nurse's opinion. Plaintiff also argues that a statutory provision regarding removal of the Commissioner of Social Security violated the separation of powers.

**I. Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by

1  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

### II. Medical Opinion Evidence

#### A. Legal Standard

For cases filed on or after March 27, 2017, nurse practitioners are acceptable medical sources under the Commissioner's new regulations, and the ALJ must evaluate opinions from nurse practitioners in the same way as opinions from other "medical sources" (licensed healthcare workers within the scope of their practice) under the factors set forth in the regulations. *See* 20 C.F.R. §§ 404.1502(a)(7), 404.1520c(a).

For applications filed on or after March 27, 2017, the Administration has also directed ALJs that they are no longer to defer to medical opinions from treating or examining sources (*see* 20 C.F.R. §§ 404.1527(c)), instead evaluating the persuasiveness of medical opinions by analyzing their "supportability" and "consistency," as well as other appropriate factors. 20 C.F.R. § 404.1520c(a).

As this Court has previously concluded, the post-March 2017 regulations supplant judicial precedent regarding the weight given to controverted examining and treating medical opinions, to the extent that there is any conflict. *See* Dkt. 20, *Mooney v. Comm'r of Social Security*, 3:19-cv-05103-RBL-JRC (W.D. Wash. Feb 14, 2020) (report and recommendation adopted March 9, 2020); Dkt. 15, *Martinson v. Commissioner of Social Security*, 3:20-cv-05149-JRC (W.D. Wash. August 25, 2020).

Plaintiff does not challenge that the Commissioner's revised regulations no longer favor treating medical opinions. *See* Dkt. 15, at 12. Based on the analysis above, the Court reviews solely whether the ALJ's decision is supported by substantial evidence and is free from legal

error. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). That is, the ALJ "must provide sufficient reasoning that allows us to perform our own review, because the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Id.* (internal citations and quotations omitted).

### B. Nurse Sedra's Opinion

Heidi Sedra, ARNP, treated plaintiff beginning in December 2018, and, in 2020, she completed a physical functional assessment form regarding plaintiff's limitations. AR 664–66. Nurse Sedra opined that plaintiff had significant limitations including limitations to how long she could sit, stand, and walk during a workday; the requirements that she shift positions at will, walk periodically during the workday, and take unscheduled breaks; lifting, carrying, and handling restrictions; and difficulty maintaining persistence and a schedule without unplanned absences. *See* AR 664–66.

The ALJ discussed Nurse Sedra's opinion, explaining that although plaintiff had a treating relationship with Nurse Sedra, "the severe limitations are not supported by the longitudinal record, including treatment records, which document management of her symptoms with medication." AR 23. The ALJ supported this statement by citing records in which plaintiff "at times exhibited hypertonicity, abnormal sensation, varied range of motion, and tenderness but otherwise often normal functioning, including consistently normal gait and station[.]" AR 23. The ALJ listed a swathe of citations to the record in support of these findings. AR 23. Finally, the ALJ concluded that "[s]uch evidence does not support such severe restrictions" as Nurse Sedra opined. AR 23.

The ALJ's findings and citations to the record in this regard flatly contradict plaintiff's argument that the ALJ "cited no evidence" to support rejecting Nurse Sedra's opinion. *See* Dkt.

15, at 12; Dkt. 20, at 8.  The ALJ articulated the basis for his conclusions, and the Court finds that plaintiff has not shown reversible error related to the ALJ's treatment of Nurse Sedra's opinion.

### III. Lay Witness Statements

Plaintiff argues that the ALJ erred by rejecting the lay witness statements of plaintiff's former employers (Sandee Bates and Bill Dean, Jr. (AR 302)) and of plaintiff's husband, Michael H.  AR 306–09.  The crux of this issue is whether even if the ALJ erred, such error was harmless under *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012).

*Molina* addressed a situation where an ALJ "fail[ed] to discuss the testimony from [the claimant's] family members" and failed to explain her reasons for rejecting that testimony.  *Id.* at 1122.  However, where that testimony did not describe any limitations greater than plaintiff's own testimony and where the ALJ otherwise properly rejected plaintiff's testimony, "the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination" and was harmless.  *Id.*

Plaintiff takes issue with this holding, arguing that it allows the Court to improperly attribute "post hoc" rationale to the ALJ.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995); Dkt. 20, at 7.  But the Court is not improperly supplying reasons that the ALJ never articulated in order to support the ALJ's decision.  The Court is engaging in a harmless error analysis to determine whether the reasoning that the ALJ *did* provide rendered any error in evaluating the lay witness opinions harmless.  Contrary to plaintiff's alternative argument, *Molina* involved a similar situation where the ALJ did not discuss the lay witnesses' statements and only discussed the claimant's testimony.  *See* Dkt. 20, at 8; *Molina*, 674 F.3d at 1109–10, 1122.

With *Molina* shaping the context of the harmless error inquiry, the Court turns to the lay witness statements at issue herein. The ALJ recognized that plaintiff's former employers and her husband had submitted statements and briefly described the comments of those statements. AR 20. The ALJ did not specifically explain why the ALJ rejected those statements but appears to have relied on his detailed summary of the longitudinal record related to plaintiff's testimony. Thus, this case presents an even more compelling case for harmless error than that in *Molina*, where the ALJ disregarded the lay witness testimony "without comment." 674 F.3d at 1108.

Moreover, the same reasons for rejecting plaintiff's testimony applied to the lay witness statements. Plaintiff's employers described her symptoms of pain, numbing and tingling in her hands, and difficulty walking or staying seated for prolonged periods. *See* AR 302. Plaintiff's allegations were to the same effect. *See* AR 21–22. She testified that she had to stand and sit during the day (AR 54) and could not do so for prolonged periods (AR 64), that she suffered pain including radiating pain into her hands (AR 62), and that she always had numbness or tingling in her arms and hands. AR 66. And the ALJ recognized these allegations and provided a detailed discussion of the medical evidence, which the ALJ concluded was inconsistent with plaintiff's claims. AR 21–22.

Similarly, regarding plaintiff's husband's statement, plaintiff argues that the ALJ ignored the significant aspects of this statement: "Plaintiff could sit 15 minutes, then had to stand; stand 20 minutes, then sit or lie down; lie down during the day; and [would] lose her balance sometimes standing or walking." Dkt. 15, at 10 (citing AR 306–09). "Plaintiff was also isolated and forgetful[] and unable to go to a store alone due to sensory overload." *Id.* (citing AR 307). But again, plaintiff herself testified to these limitations. For instance, she stated that she could not sit for more than 10 to 20 minutes (AR 64) and that she could not stand in place for more

than five minutes.  AR 65; *see also* AR 54–55 (plaintiff's testimony that she had to shift positions).  She testified that she had to lie down during the day (AR 61), that she lost her balance while standing and walking (AR 61), that she suffered sensory overload if she went grocery shopping (AR 57), and that she had issues forgetting things.  *See* AR 61, 65–66.  And again, as noted above, the ALJ provided rationale for rejecting this testimony.  The ALJ ultimately concluded that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's severe medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  AR 21.   Plaintiff does not challenge that finding.

In short, plaintiff fails to show that any error related to the treatment of the lay witness statements was not harmless.

**IV.  The Separation of Powers**

Plaintiff argues that 42 U.S.C. § 902(a)(3), the statute governing the term and removal of the Commissioner of Social Security, violates the separation of powers.  Dkt. 15, at 6.  He argues that the Commissioner at the time of the relevant agency actions in this matter (Andrew Saul) was unconstitutionally appointed under this statute, so that the agency actions in this matter are all "constitutionally defective," requiring remand.  Dkt. 15, at 6–7.

The Court has previously addressed this matter and agrees with plaintiff that § 902(a)(3)'s removal provision violates the separation of powers.  *See* Dkt. 39, at 6–13, *Tosland v. Comm'r of Social Security*, 3:20-cv-06085-JRC (W.D. Wash. Nov. 17, 2021).  Section 902(a)(3) restricts removal of the Commissioner unless the President finds "neglect of duty of malfeasance of office."  But in 2020, the Supreme Court held that vesting a federal regulatory agency's

leadership in a single individual "removable only for inefficiency, neglect, or malfeasance" violated the separation of powers. *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197 (2020). And in 2021, the Supreme Court applied *Seila Law* to a law creating a for-cause restriction on the President's removal power of the head of a federal agency, holding that "[a] straightforward application" of *Seila Law* dictated that this provision violated the separation of powers, too. *Collins v. Yellen*, 141 S. Ct. 1761, 1784 (2021). The reasoning of these cases inexorably compels the conclusion that § 902(a)(3) is similarly unconstitutional.

On the issue of the appropriate remedy for this issue, however, the Court parts ways with plaintiff. *See* Dkt. 39, at 6–13, *Tosland*, 3:20-cv-06085-JRC. Plaintiff seeks reversal and remand for a new hearing and administrative decision. Dkt. 15, at 8. According to plaintiff, if § 902(a)(3)'s removal provision is unconstitutional, then the Commissioner lacked authority to delegate to the ALJ, the Appeals Council, and other such inferior officers. Dkt. 20, at 4. But the unconstitutional removal provision is severable from the remainder of the statute. In *Seila Law*, the Supreme Court held that because the removal provision was severable, the agency could continue to exist and operate notwithstanding the removal provision. 140 S. Ct. at 2207–08. Similarly here, and again as the Court has previously concluded, the Administration remains fully functional if the removal clause in § 902(a)(3) is severed. *See* Dkt. 39, at 9, *Tosland*, 3:20-cv-06085-JRC. Moreover, the invalid removal provision does not render the Administration's actions void from the outset. In *Collins*, the Supreme Court addressed the argument that the unconstitutional removal provision rendered agency action taken, concluding that "there was no constitutional defect in the statutorily prescribed method of *appointment*" and rejecting the argument. 141 S. Ct. at 1787 (emphasis added). Thus, an unconstitutional removal clause does

not automatically void agency action and mandate reversal. *See* Dkt. 39, at 9–10, *Tosland*, 3:20-cv-06085-JRC.

The *Collins* Court did state that "it is still possible for an unconstitutional provision to inflict compensable harm," remanding the case for a decision on this issue in the first instance by the lower courts. 141 S. Ct. at 1789. Plaintiff argues, based on this language, that the former Commissioner's actions "caused specific harm by undermining, politicizing, and reducing due process protections to Plaintiff's claim." Dkt. 20, at 2; *see also* Dkt. 15, at 7. Again, however, the Court has rejected such an argument and adheres to its prior analysis:

> In contrast [to *Collins*], there is nothing showing the Commissioner or the SSA implemented new and relevant agency action that may have turned upon the President's inability to remove the Commissioner. Plaintiff has not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims. Plaintiff thus fails to show how or why § 902(a)(3) removal clause possibly harmed her.
> There is also nothing showing former President Trump would have removed Commissioner Saul and appointed a new Commissioner who would have administered this plaintiff's claims differently. . . . Accordingly, because there is no evidence that the former president sought to remove Commissioner Saul, there is no connection between § 902(a)(3)'s removal clause and possible harm the removal clause might have caused plaintiff. *Cf. Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.").
> Even assuming §902(a)(3)'s removal clause prevented former President Trump from removing Commissioner Saul and confirming a different Commissioner, there is no possibility § 902(a)(3) harmed plaintiff, because the final decision of the Commissioner that is before this Court for review is the ALJ's decision. . . . [T]he Court has reviewed the record and the ALJ's decision at issue and concludes that the ALJ did not err, and that the case should be affirmed for these reasons. Had the Court found otherwise and determined that the ALJ's decision was not supported by substantial evidence or free of legal error, the Court would have reversed the Commissioner's final decision. Hence, the Court reaches its decision to reverse or affirm the Commissioner's final decision notwithstanding the existence of § 902(a)(3)'s removal clause, who the Commissioner was at the time the decision became final, or what directives the Commissioner may have given the ALJ. The Court thus concludes that there is no possibility § 902(a)(3)'s removal clause harmed plaintiff in this case.

      Plaintiff also mentions, in her reply brief, that the Commissioner's actions reduced "due process protections.". . . *Seila Law* and *Collins* addressed infirm removal provisions that the Court found violate separation of powers, not due process; these cases thus provide no basis to support a due process claim. Additionally, a conclusory allegation that due process was denied is not sufficient to raise a colorable constitutional claim. *See e.g. Hoye v. Sullivan*, 985 F.2d 990, 992 (9th Cir. 1992).

Dkt. 39, at 11–12, *Tosland*, 3:20-cv-06085-JRC. The Court adheres to this reasoning and rejects plaintiff's separation of powers argument. As in *Tosland*, here plaintiff has not shown that the ALJ erred or that the removal provision in § 902(a)(3) is connected to the decision to deny benefits.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** is for defendant, and the case should be closed.

Dated this 6th day of December, 2021.

J. Richard Creatura
Chief United States Magistrate Judge

ORDER ON PLAINTIFF'S COMPLAINT - 10